T.C. Memo. 2009-41

UNITED STATES TAX COURT

ROBERT L. ROWDEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17510-06.               Filed February 19, 2009.

<u>Orin Christopher Meyers</u>, for petitioner.

<u>G. Chad Barton</u> and <u>Garrett D. Gregory</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies of $5,074

and $7,396 in petitioner's 2002 and 2003 Federal income taxes and

accuracy-related penalties under section 6662[1] of $1,015 and

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue, and
all Rule references are to the Tax Court Rules of Practice and
(continued...)

$1,479, respectively.  After concessions[2] the issues for decision are:

(1) Whether petitioner was in the trade or business of environmental consulting and aircraft maintenance during 2002 and environmental aviation during 2003;

(2) whether petitioner substantiated deductions claimed on Schedules C, Profit or Loss From Business; and

(3) whether petitioner is liable for the accuracy-related penalties under section 6662.

FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate in our findings by this reference.  Petitioner resided in Oklahoma when his petition was filed.

During 2002 and 2003 petitioner was employed full time as an environmental engineer by Engineering and Environment, Inc. (EEI), a government contractor.  He earned $52,611 and $60,889, respectively.  Petitioner's employment contract was renewable annually.  During 2002 petitioner also performed environmental

_____

[1](...continued)
Procedure.  Monetary amounts are rounded to the nearest dollar.

[2]Petitioner concedes that he is not entitled to deduct the $9,829 depreciation expense for 2003 and unreimbursed employee expenses of $6,596 and $5,083, before application of the 2-percent floor of sec. 67(a), for 2002 and 2003, respectively. After the latter concession petitioner's remaining miscellaneous itemized deductions do not exceed the 2-percent floor of sec. 67(a) and therefore also are not at issue.

consulting services that were an outgrowth of services he had performed and been paid for before 2002.

Petitioner grew up in a family of pilots and enjoys working on and being around airplanes. Petitioner has been a licensed pilot for about 25 years. In the 1980s petitioner completed a 2-year program at the Spartan School of Aeronautics in Tulsa, Oklahoma. After passing written and oral Federal Aviation Administration (FAA) tests, petitioner obtained a mechanic's certificate with airframe and powerplant ratings.[3] In 2000, after passing another FAA test, petitioner obtained an inspection authorization.[4] Petitioner also attended specialized aviation-related seminars; in August 2002 petitioner attended a seminar on aircraft rigging held by the Cessna Pilots Association.

On August 25, 2002, petitioner purchased a 50-percent interest in a 1975 Cessna 182P aircraft (Cessna) from DenRow

---

[3]A certified mechanic may perform or supervise the maintenance, preventive maintenance, or alteration of an aircraft or a part thereof for which he is rated. 14 C.F.R. sec. 65.81(a) (2003). A certified mechanic with an airframe rating may also approve and return to service an airframe or related part or appliance after he has performed, supervised, or inspected its maintenance or alteration. 14 C.F.R. sec. 65.85 (2003). A certified mechanic with a powerplant rating has similar additional privileges with respect to a powerplant, propeller, or any related part. See 14 C.F.R. sec. 65.87 (2003).

[4]In general, a holder of an inspection authorization may inspect and approve for return to service any aircraft or related part after a major repair or major alteration; he may also perform certain other types of inspections. See 14 C.F.R. sec. 65.95 (2003).

Limited, L.C. (DenRow), for $30,000 using loan proceeds. DenRow is owned by petitioner's brother, William J. Rowden (Mr. Rowden),[5] a commercial airline pilot, and Mr. Rowden's wife. DenRow retained the other 50-percent interest in the Cessna. The Cessna continued to be hangared at the Prague, Oklahoma, municipal airport, although occasionally it was stored at the Lawton, Oklahoma, municipal airport where in 2003 petitioner rented hangar space.

Under the purchase agreement, petitioner was responsible for one-half of the maintenance, repair, storage, and operation costs of the Cessna. When petitioner purchased his interest in the Cessna, it was not in airworthy condition because its engine required a major overhaul.[6] At some point during the years at issue, petitioner sent the engine to an outside shop for an overhaul, at a cost of approximately $25,000.

---

[5]At the time of trial Mr. Rowden held a mechanic's certificate with airframe and powerplant ratings and an inspection authorization, and he was a flight instructor for single-engine and multi-engine aircraft and instruments and a commercial glider pilot. Mr. Rowden bought undervalued airplanes, used them for charter and instruction, and then sold them. DenRow purchased the 1975 Cessna 182P (Cessna) in 2000 for $43,000. During the years at issue petitioner was not a partner, member, or agent of DenRow, and he was not involved in making any of its business decisions.

[6]Airworthy means that the aircraft conforms to its type design and is in a condition for safe operation. 14 C.F.R. 3.5(a) (2008). Overhaul is a type of aircraft maintenance. 14 C.F.R. 1.1 (2003) (defined under the word "maintenance").

During the years at issue petitioner spent 20 to 30 hours weekly working on the Cessna, on airplanes owned by other people, and on related matters. Neither Mr. Rowden nor DenRow paid petitioner for work he performed on the Cessna.

During the years at issue the Cessna was for sale. Petitioner followed market prices using various sources for aircraft valuation, such as trade periodicals. In 2007 the Cessna was appraised at $93,000. As of the date of trial Mr. Rowden did not believe the Cessna could be sold at a profit.

Petitioner timely filed his 2002 and 2003 Forms 1040, U.S. Individual Income Tax Return (2002 and 2003 returns). On the 2002 return he reported two businesses on two Schedules C (2002 Schedules C1 and C2). The 2002 Schedule C1 described petitioner's business as "Env [Environmental] Consulting", and the 2002 Schedule C2 described petitioner's other business as "Aircraft Maintenance". Petitioner reported one business on a Schedule C attached to the 2003 return (2003 Schedule C) and described his business as "Environmental Aviati[on]". On his Schedules C petitioner reported gross income and expenses and net profit or loss, as shown in the following table:

| Schedule C | Gross income | Expenses | Net profit or (loss) |
|---|---|---|---|
| 2002 Schedule C1 | -0- | $9,780 | ($9,780) |
| 2002 Schedule C2 | $450 | 11,364 | (10,914) |
| 2003 Schedule C | 2,238 | 27,531 | (25,293) |

The following table compares the adjusted gross income (AGI) that petitioner would have reported if he had not engaged in his activities with the AGI that he actually reported on his 2002 and 2003 returns:

| Year | AGI without the activities | AGI reported |
|---|---|---|
| 2002 | $53,807 | $33,113 |
| 2003 | 63,137 | 37,844 |

In the notice of deficiency respondent disallowed all 2002 Schedule C1 and 2003 Schedule C deductions. Respondent also disallowed deductions for tools, parts, and training expenses totaling $8,744 claimed on the 2002 Schedule C2.[7] Respondent disallowed these Schedule C deductions for the following reason: "Your deductions * * * have been adjusted to reflect the amount verified as paid or incurred for business purposes." Because respondent disallowed the deductions for business use of home of $511 and $504 claimed on the 2002 Schedule C1 and 2003 Schedule C, respondent allowed additional home mortgage interest deductions of $511 and $504 for 2002 and 2003, respectively.

---

[7]Respondent contends that in the notice of deficiency he erroneously allowed the 2002 Schedule C2 deductions totaling $2,620, but he does not assert an increased deficiency for 2002.

Respondent made computational adjustments to self-employment tax for 2003 and determined that petitioner was liable for accuracy-related penalties under section 6662 of $1,015 and $1,479 for 2002 and 2003, respectively.

## OPINION

The Commissioner's determinations are presumed correct, and the taxpayer ordinarily bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deduction claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Petitioner does not contend that section 7491(a) shifts the burden of proof to respondent, and petitioner has not established that he satisfies the section 7491(a)(2) requirements.

Respondent contends that petitioner may not deduct his Schedule C expenses because none of the Schedule C activities was a trade or business.[8]  Section 162(a) allows a taxpayer to deduct

---

[8]In the notice of deficiency respondent disallowed the deductions as not verified as paid or incurred for business purposes.  At trial respondent argued that petitioner did not engage in the trade or business of environmental consulting and aircraft maintenance during 2002 and environmental aviation during 2003.  Petitioner does not contend that the argument represents a new issue on which respondent should have the burden of proof.  See Rule 142(a).  In addition, petitioner listed the profit-motive issue with respect to the aviation-related activities in his trial memorandum as one for decision.

ordinary and necessary expenses of carrying on the taxpayer's trade or business.  To be engaged in a trade or business with respect to which deductions are allowable under section 162, "the taxpayer must be involved in the activity with continuity and regularity", and "the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  A sporadic activity or a hobby does not qualify.  Id.

## I.   The Environmental Consulting Activity in 2002[9]

Petitioner testified that he engaged in the environmental consulting activity "when available" and that the aviation activity had become his priority.  During 2002 petitioner reported no gross income from the activity and only performed followup services; he attended two client meetings and conducted online research related to the activity.  Petitioner did not introduce any evidence regarding how much time he spent on the activity.  We conclude petitioner failed to establish that in

_____

[9]Although respondent states in his reply brief that petitioner has conceded the issue of the environmental consulting activity because he failed to address it on brief, petitioner in his opening brief continues to challenge the full amount of deficiency and identifies the 2002 Schedule C1 amounts as still in dispute.  Nevertheless, we agree with respondent that petitioner does not address the environmental activity elsewhere in briefs, and we note that petitioner also agrees with respondent's proposed finding of fact that "Petitioner failed to introduce credible evidence that he was in the environmental consulting business in 2002."  We address the environmental consulting activity for the sake of completeness.

2002 he engaged in the environmental consulting activity with the requisite continuity and regularity.  See id.  Consequently, we do not need to address whether petitioner engaged in the environmental consulting activity for profit and whether he substantiated deductions claimed on the 2002 Schedule C1.

II.  <u>Aircraft Maintenance Activity in 2002 and Environmental Aviation Activity in 2003</u>

A.  <u>In General</u>

Section 162 allows deductions for ordinary and necessary expenses of carrying on an activity which constitutes the taxpayer's trade or business.  To be engaged in a trade or business under section 162(a), "the taxpayer's primary purpose for engaging in the activity must be for income or profit." <u>Commissioner v. Groetzinger</u>, <u>supra</u> at 35.  Section 212 allows deductions for expenses paid or incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.  The profit standards applicable to section 212 are the same as those used in section 162.  See <u>Allen v. Commissioner</u>, 72 T.C. 28, 33 (1979).

Petitioner contends that respondent has conceded the profit-motive issue.  We disagree.  Respondent has not conceded the issue; respondent argued during trial and on brief that to establish that petitioner was engaged in a trade or business petitioner must prove he engaged in an activity with continuity

and regularity and with the primary purpose of making a profit.
See Commissioner v. Groetzinger, supra at 35.  We begin our
analysis of whether petitioner's aircraft maintenance activity or
environmental aviation activity was a trade or business by
examining whether petitioner engaged in either activity with the
requisite profit motive.

Section 183, which restricts taxpayers from deducting losses
from an activity that is not engaged in for profit, is often
applied to determine whether an alleged trade or business is
conducted with the requisite profit motive.  Cannon v.
Commissioner, 949 F.2d 345, 348 (10th Cir. 1991), affg. T.C.
Memo. 1990-148; Krause v. Commissioner, 99 T.C. 132, 168 (1992),
affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th
Cir. 1994).  Section 183(c) defines any "activity not engaged in
for profit" as "any activity other than one with respect to which
deductions are allowable for the taxable year under section 162
or under paragraph (1) or (2) of section 212."

Absent a stipulation to the contrary, see sec. 7482(b)(2),
this case is appealable to the Court of Appeals for the Tenth
Circuit, which has applied the dominant or primary objective
standard to test whether an alleged business activity is
conducted for profit, Hildebrand v. Commissioner, 28 F.3d at

1027; <u>Cannon v. Commissioner</u>, <u>supra</u> at 350;[10] <u>Oswandel v. Commissioner</u>, T.C. Memo. 2007-183.  Under the standard applied by the Court of Appeals for the Tenth Circuit, a taxpayer's dominant or primary objective in conducting the activity must be to earn a profit.  Whether an activity was engaged in for profit is a factual determination to be resolved on the basis of all the surrounding facts and circumstances.  <u>Hildebrand v. Commissioner</u>, 28 F.3d at 1027.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be considered in determining whether a taxpayer has the requisite profit objective.  The factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9)

---

[10]In both <u>Hildebrand v. Commissioner</u>, 28 F.3d 1024, 1027 (10th Cir. 1994), affg. <u>Krause v. Commissioner</u>, 99 T.C. 132 (1992), and <u>Cannon v. Commissioner</u>, 949 F.2d 345, 350 (10th Cir. 1991), affg. T.C. Memo. 1990-148, the Court of Appeals for the Tenth Circuit applied the dominant or primary objective test at the partnership level in analyzing whether a partnership was engaged in an activity for profit under sec. 183.

elements of personal pleasure or recreation.  No single factor is determinative.  See id.

While the taxpayer's expectation of profit need not be reasonable, it must be in good faith.  Allen v. Commissioner, supra at 33.  We give greater weight to the surrounding objective facts than to the taxpayer's mere statement of intent.  Cannon v. Commissioner, supra at 351 n.8; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983).

B.  Nature of the Environmental Aviation Activity in 2003

Petitioner testified that the environmental aviation activity reported on the 2003 Schedule C combined two activities: Environmental consulting and aircraft maintenance.  Petitioner received his 2003 Schedule C gross income from two clients for performing annual inspections in the course of the aircraft maintenance activity.[11]  The record establishes that most 2003 Schedule C expenses, such as interest on the aviation loan, the Cessna insurance, and parts expenses, were incurred for petitioner's aircraft maintenance activity.  Consequently, for purposes of this opinion we treat the environmental aviation

---

[11]While petitioner's testimony is not clear as to whether such annual inspections were performed in the course of environmental consulting services or aircraft maintenance services, petitioner contends in his brief that his 2003 Schedule C gross income was derived from "aircraft activities".

activity as a continuation of the 2002 aircraft maintenance activity.

###### C. Applying the Factors

###### 1. Manner in Which Petitioner Conducted the Activity

In deciding whether a taxpayer has conducted an activity in a businesslike manner we consider:  (1) Whether complete and accurate books and records were maintained; (2) whether the activity was conducted in a manner substantially similar to those of other activities of the same nature that were profitable; and (3) whether changes in operating methods, adoption of new techniques, or abandonment of unprofitable methods were done in a manner consistent with an intent to improve profitability.  See Engdahl v. Commissioner, 72 T.C. 659, 666-668 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner's recordkeeping was disorganized and unreliable. For example, although petitioner retained all receipts for his expenses, petitioner's files mistakenly contained receipts for unrelated  years.  Petitioner did not introduce any records pertaining to gross income, such as copies of customer work orders, logbooks, or customer invoices.  Petitioner testified that approximately 25 percent of the parts he purchased were used for airplanes other than the Cessna and that he kept records for larger inventory items.  However, petitioner did not introduce any inventory records into evidence.

We are not convinced that petitioner's recordkeeping represented anything other than an effort to substantiate expenses claimed on his return.  For a taxpayer's books and records to indicate a profit motive, the taxpayer should use books and records for measuring profits, cutting expenses, and evaluating the overall performance of the operation.  Golanty v. Commissioner, 72 T.C. 411, 430 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).  Petitioner's records, however, consisted of a collection of receipts.  Petitioner presented no evidence that he used them to evaluate the profitability of his operations.

Petitioner testified that he had engaged in the aircraft maintenance activity since 1996.  However, he offered no evidence regarding the past performance of the activity and whether he considered changes in his operating methods.

We conclude that during the years at issue petitioner did not conduct his aircraft maintenance activity in a businesslike manner.  This factor favors respondent's position.

2.    Expertise of Petitioner or His Advisers

Preparation for an activity by an extensive study of its accepted business, economic, and scientific practices or consultation with those who are experts therein may indicate a profit objective.  Engdahl v. Commissioner, supra at 668; sec. 1.183-2(b)(2), Income Tax Regs.  Efforts to gain experience and a

willingness to follow expert advice may indicate a profit motive. Engdahl v. Commissioner, supra at 668. Petitioner established that he had acquired technical expertise by completing studies at the Spartan School of Aeronautics and by obtaining FAA certifications. However, petitioner did not establish that he had had experience or had acquired expertise in running a profitable business. This factor is neutral.

### 3. Time and Effort Devoted to the Activity

The fact that a taxpayer devotes personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly where there are no substantial personal or recreational elements associated with the activity. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner testified that he spent between 20 and 30 hours weekly working on the Cessna and his clients' airplanes.[12] However, the time petitioner spent working on the Cessna is consistent with the use of the Cessna for recreation. See Warden v. Commissioner, T.C. Memo. 1995-176 (finding that the time the taxpayers spent on cleaning and maintaining their yacht was consistent with the use of the yacht for recreation), affd. without published opinion 111 F.3d 139 (9th Cir. 1997). Petitioner did not introduce any evidence regarding what portion of 20-30 hours per week he spent working

---

[12]Petitioner also testified that he spent between 20 and 40 hours weekly on the aircraft maintenance activity.

on clients' airplanes.  Although petitioner testified that at the time of trial he spent less than 20 hours annually flying (predominantly using the Cessna), he did not introduce any evidence regarding how much of his use of the Cessna (after the repairs during the years at issue) was for personal flying and how much was for income-producing activities.  Given the lack of evidence regarding the appropriate allocation, we conclude this factor is neutral.

> 4.  Expectation That Assets Used in the Activity May Appreciate

The term "profit" encompasses appreciation of assets used in the activity.  Sec. 1.183-2(b)(4), Income Tax Regs.  An activity may produce an overall economic profit, even if there is no operational profit, when appreciation of the assets of the activity is taken into account.  Id.

Petitioner claims that his business's value increased because the Cessna appreciated after the overhaul and because the Cessna ownership provided his business additional client exposure.  The only evidence in the record that the Cessna was an advertising tool is petitioner's uncorroborated testimony, which we are not required to accept.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  As to petitioner's expectations regarding the appreciation of the Cessna, although both petitioner and his brother testified that the Cessna had always been for sale and they had hoped to sell it at a profit, petitioner did not offer

into evidence any listing prices for the Cessna or comparable aircraft or any other credible evidence in support of his claim that he had a good-faith expectation of selling the Cessna at a profit.

Even if we were to conclude, however, that petitioner had a good-faith expectation of selling the overhauled Cessna at a profit, we must still examine whether petitioner had a good-faith expectation of realizing a profit on his entire operation. Bessenyey v. Commissioner, 45 T.C. 261, 275 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Such an expectation should be based on analyzing estimated future earnings from the activity, the likely appreciation of the Cessna, and whether the resulting amount would be sufficient to recoup losses from the activity. Because an airplane is generally a wasting asset, we fail to see how petitioner could expect in good faith to recoup his $30,000 cost of a one-half interest in the Cessna, the capital expenditures for the overhaul and repair of the Cessna, and his accumulated operating losses. Petitioner's expectation of making a profit was not based on careful analysis, and it is not supported by credible evidence. This factor favors respondent.

5. Success in Carrying On Other Similar or Dissimilar Activities

The fact that a taxpayer has engaged in similar activities and converted them from unprofitable to profitable enterprises may indicate that the taxpayer is engaged in the present activity

for a profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. Although petitioner testified he engaged in the environmental consulting activity before the years in issue, he offered no evidence regarding his success in the activity. This factor is neutral.

> 6. Petitioner's History of Income or Loss From the Activity

A taxpayer's history of income or loss with respect to any activity may indicate the presence or absence of a profit objective. See Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b)(6), Income Tax Regs. However, "a series of startup losses or losses sustained because of unforeseen circumstances beyond the control of the taxpayer may not indicate a lack of profit motive." Kahla v. Commissioner, T.C. Memo. 2000-127 (citing Engdahl v. Commissioner, 72 T.C. at 669, and section 1.183-2(b)(6), Income Tax Regs.), affd. without published opinion 273 F.3d 1096 (5th Cir. 2001).

Petitioner testified that he had been providing maintenance services, such as aircraft maintenance, rigging, inspection, sale, and refurbishing since 1996. However, petitioner introduced no credible evidence regarding the financial performance of his aircraft maintenance activity before the years at issue. The failure to introduce such evidence raises a presumption that the evidence would be unfavorable to petitioner. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158,

1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). This factor favors respondent's position.

### 7. Amount of Occasional Profits

The amount of profits earned in relation to the amount of losses incurred, the amount of the investment, and the value of the assets in use may indicate a profit objective. See sec. 1.183-2(b)(7), Income Tax Regs. The opportunity to earn substantial profits in a highly speculative venture may be sufficient to indicate that the activity is engaged in for profit even though only losses are produced. See id.

During 2002 and 2003 the aircraft maintenance activity generated net losses which significantly reduced petitioner's AGI. Petitioner offered no credible evidence regarding what profits, if any, his aircraft maintenance activity generated between 1996 and 2001. Failure of a party to introduce evidence within his possession which, if true, would be favorable to him gives rise to the presumption that such evidence is unfavorable. Wichita Terminal Elevator Co. v. Commissioner, supra at 1165. This factor favors respondent's position.

### 8. Petitioner's Financial Status

The fact that a taxpayer does not have substantial income or capital from sources other than the activity in question may indicate that the activity is engaged in for profit. See sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from sources

other than the activity (especially if the losses from the activity generate substantial tax benefits) may indicate a lack of profit motive, particularly where elements of personal pleasure or recreation are involved. See id.

During 2002 and 2003 petitioner was employed as an environmental engineer, earning $52,611 and $60,889, respectively. Petitioner is single and has no children. Although the income did not support a lavish lifestyle, it provided petitioner with a comfortable living and allowed him to conduct the aircraft maintenance activity at a loss. This factor favors respondent's position.

### 9. Elements of Personal Pleasure or Recreation

The presence of personal pleasure or recreation relating to the activity may indicate the absence of a profit objective. See sec. 1.183-2(b)(9), Income Tax Regs. An activity is not treated as an activity not engaged in for profit merely because the taxpayer also has purposes or motivations other than to make a profit. Id.

Petitioner grew up around airplanes and has been a licensed pilot for 25 years. He enjoys working on airplanes and takes pride in his workmanship and in his family's aviation history. We cannot overlook significant elements of recreation and pleasure that petitioner derived from working on airplanes. This factor favors respondent's position.

D. Petitioner's Argument

Petitioner relies on Doggett v. Burnet, 65 F.2d 191 (D.C. Cir. 1933), revg. 23 B.T.A. 744 (1931), to suggest that a profit motive exists if a taxpayer enters into and carries on an activity with a good-faith intention to make a profit or with the belief that a trade or business can be profitable. However, in determining a taxpayer's intent, the Court of Appeals for the Tenth Circuit gives less weight to the taxpayer's statement of intent than to objective factors. Cannon v. Commissioner, 949 F.2d at 351 n.8. Moreover, such reliance on objective factors is consistent with section 1.183-2(a), Income Tax Regs., providing:

> The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. * * * [Emphasis added.]

After a review of the objective factors discussed above, we are not convinced that petitioner engaged in his aircraft maintenance activity with the objective of making a profit.

E. Conclusion

After considering the factors listed in section 1.183-2(b), Income Tax Regs., and the facts and circumstances of this case, we conclude that petitioner has not established that he engaged in the aircraft maintenance activity with the primary or dominant objective of making a profit.

Accordingly, we hold that petitioner's aircraft maintenance activity did not constitute a trade or business or profit-seeking activity in 2002 or 2003.

F.  Deductibility of the 2002 Schedule C2 and 2003 Schedule C Expenses

Because we have sustained respondent's determination that petitioner's aircraft maintenance activity was not a trade or business under section 162, we must decide what deductions, if any, he may claim under section 183(b). Section 183(b)(1) permits deductions which are otherwise allowable without regard to whether the activity is engaged in for profit, such as State and local taxes and casualty losses.  Section 183(b)(2) allows deductions that would be allowable if the activity were engaged in for profit, but only to the extent of gross income received from the activity, reduced by deductions under section 183(b)(1).

With respect to the 2002 Schedule C2, respondent allowed $2,620 in deductions.  This amount exceeds petitioner's $450 gross income from the activity. Consequently, no additional deductions are allowed for 2002.

For 2003 petitioner did not claim any deductions that are allowable under section 183(b)(1).  In his brief respondent concedes that "If the Court finds that petitioner was in the trade or business of environmental aviation in 2003, petitioner has substantiated the following expenses to

be ordinary and necessary business expenses".    Respondent
lists the following expenses as substantiated:

| Expense | Amount substantiated |
|---|---|
| Insurance | $529 |
| Office expense | 186 |
| Rent of other business property | 1,200 |
| Supplies | 1,020 |
| Tools | 1,570 |
| Training certifications | 313 |
| Professional subscription | 110 |
| Total | 4,928 |

Although we hold that in 2002 and 2003 petitioner's aircraft
maintenance activity did not constitute a trade or business
under section 162 or an activity for the production of
income under section 212, under section 183(b)(2)
petitioner's substantiated expenses from the activity are
deductible for 2003 to the extent of $2,238, the gross
income generated by the activity.

III. Accuracy-Related Penalty Under Section 6662

Respondent contends that petitioner is liable for the
accuracy-related penalty on the grounds of substantial
understatement of income tax under section 6662(a) and
(b)(2) for 2002 and 2003 or, alternatively, negligence or
disregard of rules or regulations under subsection (b)(1).[13]

_____

[13]Respondent argues that petitioner has conceded the issue
of penalties because petitioner does not address it in his brief.
We address the issue for the sake of completeness because

(continued...)

Section 6662(a) and (b)(2) authorizes the Commissioner to impose a 20-percent penalty if there is a substantial understatement of income tax.  An understatement is substantial if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

The Commissioner bears the initial burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty. See sec. 7491(c).  Respondent established that for both years at issue the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Because respondent has met his burden of production, petitioner must produce sufficient evidence to prove that respondent's determination is incorrect.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

The accuracy-related penalty is not imposed with respect to any portion of the underpayment if the taxpayer can establish that he acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The taxpayer bears the burden

---

[13](...continued) petitioner lists the issue as one for decision in his reply brief.

of producing evidence to demonstrate reasonable cause under section 6664(c)(1).  See <u>Higbee v. Commissioner</u>, <u>supra</u> at 446-448.  We determine reasonable cause and good faith on a case-by-case basis, taking into account all pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.

In his posttrial briefs petitioner did not address why the penalties should not be imposed.  Petitioner did not contend that he was not negligent or that he had reasonable cause or acted in good faith.  Therefore, we sustain respondent's determination to impose the section 6662(a) and (b)(2) accuracy-related penalty for 2002 and 2003.

We have considered all arguments raised by either party, and to the extent not discussed, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.