T.C. Summary Opinion 2017-41

UNITED STATES TAX COURT

ERIC ZUDAK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4697-16S.                    Filed June 19, 2017.

Eric Zudak, pro se.

<u>Jared R. Weidenbaum</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $10,857 in petitioner's Federal income tax for 2013 and an accuracy-related penalty of $2,171 pursuant to section 6662(a). Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a).

The issues for decision are (1) whether petitioner is entitled to a deduction of $32,747 for "Other Expenses" reported on Schedule C, Profit or Loss From Business, for 2013 and, if not, (2) whether petitioner is liable for an accuracy-related penalty under section 6662(a). To the extent not discussed herein, other adjustments are computational and flow from our decision in this case.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Indiana.

---

[1](...continued)
Revenue Code, as amended and in effect for 2013, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

I. General Background

Petitioner grew up in Athens, Ohio, home to Ohio University (OU). Petitioner attended the University of Evansville where he earned a bachelor's degree, majoring in fine arts. After graduation he spent some time "involved in theater" in Chicago, Illinois.

Petitioner began working for Trifecta Multimedia, LLC (Trifecta), in 2006. Initially his primary responsibility was to organize and conduct conferences and training sessions to market Trifecta's software products and applications for pharmaceutical research. In 2008 petitioner became Trifecta's director of business development.

In 2013 Trifecta paid petitioner wages of $243,224. He traveled extensively for Trifecta, worked long hours, and took little time off.

II. Karaoke Man Productions, LLC

In 2010 petitioner and some friends organized Karaoke Man Productions, LLC (KMP). Petitioner owns an approximately 20% interest in KMP. Through KMP, petitioner (who acted as executive producer) and his friends financed and produced an independent film titled "Karaoke Man", a romantic comedy.

While attempting to market Karaoke Man, petitioner attended several small film festivals and found them to be poorly organized and thinly attended. After

discussions with Matthew Jordan, a longtime friend and professor of media studies at Pennsylvania State University (PSU), petitioner concluded that cities and towns with a local college or university would provide the population density, desirable demographics, and infrastructure to support a film festival. Petitioner believed that he could successfully market a film festival to college students and faculty with interests in various academic disciplines including sociology, education, business, and communications/media/theater.

In March 2012 petitioner arranged a screening of Karaoke Man at PSU for students and faculty, followed by a question and answer session attended by the film's lead actress, one of the writers, and the director.

## III. US College Film Festival, LLC

In July 2012 petitioner organized US College Film Festival, LLC (CFF). Petitioner is the sole member of CFF. He did not draft a business plan, prepare profit projections, or undertake a formal market analysis for CFF.

Sometime in 2013 petitioner established a website for CFF, and he posted a "LETTER from the FOUNDER" addressed to "Dear Filmmaker". The letter explained that petitioner hoped to "create a film festival where the interests of the festival directors would align with the interests and passions of working filmmakers, especially indie filmmakers." In describing an early organizational

meeting with "the CFF team" the letter states: "[E]veryone knew I was serious about 1) artistic expression, 2) the indie spirit and 3) the value of aggressive creativity. They also knew I didn't give a damn about generating revenue, catering to the donors or preserving an imaginary legacy. I just wanted to bring together academics, artists and business development folks, in a way that created value for everyone involved."

CFF conducted a film festival at PSU from March 14 to 17, 2013. PSU provided free of charge a theater for screening films and an unspecified number of hotel rooms for individuals who participated in the festival.

In August 2013 petitioner had discussions with various individuals and corporate sponsors with the aim of obtaining financial, promotional, and organizational support for CFF.

CFF conducted a film festival at OU from October 3 to 6, 2013, screening 10 feature-length films (including Karaoke Man) and 8 short films. During the festival one of the writers and the director of Karaoke Man participated in a panel discussion of the film.

## IV. Petitioner's 2013 Tax Return

Petitioner timely filed a Federal income tax return for 2013. He reported wage income from Trifecta of $243,224 and total tax of $39,041. Petitioner

attached to his tax return a Schedule C for CFF reporting gross receipts of $690 and expenses of $32,747, resulting in a net loss of $32,057. Petitioner did not include a schedule of CFF's expenses with his tax return. Petitioner also attached to his return a Schedule E, Supplemental Income and Loss, reporting in relevant part a nonpassive loss of $2,031 in connection with his interest in KMP.

Petitioner's tax return was prepared and filed by his accountant, Louis Rubenstein, who had prepared his tax returns for many years.

## V. CFF Expenses

Before trial petitioner reviewed bank and credit card records and prepared several schedules in an effort to substantiate CFF's expenses for the taxable year 2013. These records indicate that petitioner and CFF paid airfare, hotel, and local transportation charges for volunteers and participants who attended CFF's film festivals at PSU and OU. Petitioner also paid significant miscellaneous expenses including rental charges for the use of a theater near OU, the cost of live concerts at the OU film festival, photographer fees, mobile Internet access service charges, electronic equipment purchases, and consultant and website development/graphic design fees.

## VI. Taxable Years 2014 and 2015

By 2014 petitioner had concluded that it was unlikely that CFF could earn a profit simply by selling tickets to individuals attending its film festivals. He noted that the rent charged for the theater at the OU film festival was $4,700, and he doubted that CFF could sell enough tickets to recoup that cost. Following a film festival at OU in 2014, petitioner decided that CFF would not return to that venue because the university did not provide enough financial support for the festival.

At trial petitioner offered into evidence Schedules C for CFF for the taxable years 2014 and 2015. The Schedule C for 2014 indicates that CFF had gross receipts of $29,500, offset by expenses of $63,204, resulting in a loss of $33,704. The Schedule C for 2015 indicates that CFF had gross receipts of $53,402, offset by expenses of $55,201, resulting in a loss of $1,799.

## Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner has not asserted that the burden of proof as to any factual issue should be shifted to respondent under section 7491(a), and there is no justification on this record for doing so.

Respondent does not dispute that petitioner and CFF paid the expenses reported on Schedule C for the taxable year 2013. Respondent's primary contention, however, is that petitioner is not entitled to a deduction for those expenses because he was not carrying on the film festival activity as a trade or business in 2013 within the meaning of section 162(a). Respondent maintains that petitioner engaged in the activity as a hobby (i.e., that he did not engage in the activity to earn a profit).[2]

I. Section 183

Under section 183(a), if an activity is not engaged in for profit, then no deduction attributable to that activity is allowed except to the extent provided by section 183(b). In pertinent part, section 183(b) allows those deductions that would have been allowable had the activity been engaged in for profit only to the extent of gross income derived from the activity (reduced by deductions attributable to the activity that are allowable without regard to whether the activity was engaged in for profit).

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year

---

[2]The Court's jurisdiction in this case is limited to a redetermination of petitioner's tax liability for 2013. We express no opinion regarding CFF's operations for any taxable year other than 2013.

under section 162 or under paragraph (1) or (2) of section 212." Deductions are allowable under section 162 or under section 212(1) or (2) if the taxpayer is engaged in the activity with the "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 426-427 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981).

The existence of the requisite profit objective is a question of fact that must be decided on the basis of the entire record. Elliott v. Commissioner, 84 T.C. 227, 236 (1985), aff'd without published opinion, 782 F.2d 1027 (3d Cir. 1986); Dreicer v. Commissioner, 78 T.C. at 645; sec. 1.183-2(b), Income Tax Regs. In resolving this factual question, greater weight is given to objective facts than to a taxpayer's statement of intent. See Westbrook v. Commissioner, 68 F.3d 868, 875-876 (5th Cir. 1995), aff'g T.C. Memo. 1993-634; sec. 1.183-2(a), Income Tax Regs. For purposes of deciding whether the taxpayer has the requisite profit objective, profit means economic profit, independent of tax savings. Surloff v. Commissioner, 81 T.C. 210, 233 (1983).

Regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists. These factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his

advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value;[3] (5) the taxpayer's success in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.

No single factor, nor even the existence of a majority of factors supporting or rebutting the existence of a profit objective, is controlling. Id. Rather, all facts and circumstances with respect to the activity are to be taken into account. Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b), Income Tax Regs.

A. Manner in Which Petitioner Carried On the Activity

If a taxpayer carries on an activity in a businesslike manner and maintains complete and accurate books and records, it may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. Keeping records only for purposes of preparing tax returns, however, is not indicative of a profit objective. See Rowden v.

---

[3]Petitioner acknowledges that CFF had no assets that could appreciate in value. Thus, this factor is not relevant to our analysis.

Commissioner, T.C. Memo. 2009-41; Kinney v. Commissioner, T.C. Memo. 2008-287.

Although petitioner was able to gather bank and credit card records for the purpose of identifying expenses attributable to CFF's activities, he did not maintain those records in a businesslike manner. Moreover, there is no indication that he maintained records with the aim of preparing profit projections, a break-even analysis, or a formal budget. The record suggests that petitioner used the records only to compute CFF's losses for tax purposes. This factor weighs against petitioner.

### B. Expertise of Petitioner or His Advisers

Preparation for an activity by extensive study of its accepted business practices, or consultation with those who are expert therein, may indicate a profit objective where the taxpayer carries on the activity in accordance with such practices. Sec. 1.183-2(b)(2), Income Tax Regs. Although petitioner had attended a number of film festivals in an effort to market Karaoke Man, he had no practical experience organizing or operating a film festival. Petitioner consulted with his friend, a professor of media studies at PSU, but there is no indication that this individual had any experience or expertise himself in running a small business or organizing and directing a film festival. This factor weighs against petitioner.

C.  Time and Effort Expended in Carrying On the Activity

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly if the activity does not have substantial personal or recreational aspects.  Id. subpara. (3).  Petitioner worked full time, and long hours at that, for  Trifecta during the year in issue.  We are left with the impression, however, that he devoted much of his free personal time to planning, coordinating, and attending the two film festivals that CFF held in 2013.  Although the activity provided personal (and perhaps recreational) benefits, on balance we conclude that this factor weighs in petitioner's favor.

D.  Success in Carrying On Other Similar or Dissimilar Activities

The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that the activity in question was engaged in for profit, even though the activity is presently unprofitable.  Id. subpara. (5).  Petitioner had no prior experience organizing or conducting a film festival or personally managing a small business.  Although petitioner apparently was successful in his work for Trifecta, we consider that experience to be only marginally relevant to whether he carried on the CFF activity with the requisite profit objective.  This factor weighs against petitioner.

E.  History of Income or Loss

A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit.  Sec. 1.183-2(b)(6), Income Tax Regs.; see Golanty v. Commissioner, 72 T.C. at 427. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status, such continued losses, if not explainable, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs.  The "goal must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years."  Bessenyey v. Commissioner, 45 T.C. 261, 273-274 (1965), aff'd, 379 F.2d 252 (2d Cir. 1967); see Nissley v. Commissioner, T.C. Memo. 2000-178.

CFF incurred a significant loss in 2013--its first full year of activity. Petitioner offered copies of Schedules C at trial showing that CFF generated gross receipts of $29,500 and $53,402, offset by expenses of $63,204 and $55,201, for the taxable years 2014 and 2015, respectively.  Although CFF's income and losses for taxable years after the year in issue are relevant to our analysis, see Grommers v. Commissioner, T.C. Memo. 1992-343, petitioner did not offer complete copies

of his tax returns for 2014 and 2015 or provide evidence substantiating the source of CFF's gross receipts and expenses for those taxable years. Consequently, the Court gives little evidentiary weight to the Schedules C. In any event, the record shows that CFF has not reported an annual profit during the relatively short period it has been in operation. Although petitioner remains optimistic that the film festival activity will eventually generate profits, there is no indication when or if the activity will generate profits sufficient to offset the cumulative losses that CFF has incurred to date. In sum, CFF's history of losses is indicative of a lack of profit objective. See Golanty v. Commissioner, 72 T.C. at 427; Ogden v. Commissioner, T.C. Memo. 1999-397, aff'd, 244 F.3d 970 (5th Cir. 2001). This factor weighs against petitioner.

F. Occasional Profits

The amount of profits in relation to the amount of losses incurred and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity may provide useful criteria in determining the taxpayer's intent. Sec. 1.183-2(b)(7), Income Tax Regs. As discussed above, although petitioner has expended large sums in support of the film festival activity, the activity has produced no profits and has generated substantial losses. This factor weighs

against petitioner. See Golanty v. Commissioner, 72 T.C. at 427; Nissley v. Commissioner, T.C. Memo. 2000-178.

   G. Financial Status

The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from sources other than the activity, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit. Id.

Petitioner is gainfully employed full time at Trifecta and his wages are the primary source of his income. During 2013 he earned wages of $243,224. The record does not reflect petitioner's wages for the years before or after 2013. As for the taxable year 2013, the loss that petitioner claimed in respect of CFF's activity served to offset substantial amounts of his Trifecta wages, decreasing his taxable income and achieving substantial tax savings. This factor weighs against petitioner.

H.  Elements of Personal Pleasure or Recreation

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are elements of recreation or personal pleasure.  Sec. 1.183-2(b)(9), Income Tax Regs.

Considering the record as a whole, it is evident that petitioner enjoys organizing, conducting, and attending film festivals and that he used CFF at least in small part to showcase Karaoke Man--a personal project.  Petitioner acknowledged that the film festival activity served as a good substitute for a vacation.  This factor weighs against petitioner.

I.  Conclusion

Considering all the facts and circumstances, we hold that petitioner did not conduct the film festival activity in a businesslike manner and he did not engage in the activity with the requisite profit objective during the taxable year 2013.  Consequently, we sustain respondent's determination that petitioner is not entitled to a deduction for the net loss of $32,057 that he reported on Schedule C for the year in issue.

## II. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the amount of any underpayment of tax that is attributable to (1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). An understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax

Regs. Reliance on a tax professional may demonstrate that the taxpayer had reasonable cause and acted in good faith where the taxpayer establishes that (1) the adviser was a competent professional with sufficient expertise to justify the taxpayer's reliance, (2) the taxpayer provided the adviser with necessary and accurate information, and (3) the taxpayer actually relied in good faith on the adviser's judgment. 3K Inv. Partners v. Commissioner, 133 T.C. 112, 117 (2009); DeCleene v. Commissioner, 115 T.C. 457, 477 (2000).

With respect to an individual taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Respondent has discharged his burden of production under section 7491(c). We have sustained respondent's deficiency determination, and the resulting underpayment exceeds both 10% of the tax required to be shown on petitioner's tax return and $5,000. Sec. 6662(d)(1)(A).

Petitioner offered little in the way of a defense to the imposition of an accuracy-related penalty for the year in issue. He clearly did not maintain orderly records of CFF's income and expenses. Moreover, although he relied on Mr. Rubenstein to prepare his tax return, the record suggests that he did not provide Mr. Rubenstein with any substantive records related to CFF's gross receipts and expenses when his return was prepared and filed. In short, we are unable to conclude that petitioner had reasonable cause for the tax underpayment at issue or that he reasonably relied on Mr. Rubenstein. Considering all the facts and circumstances, we sustain respondent's determination that petitioner is liable for an accuracy-related penalty for 2013.

To reflect the foregoing,

<u>Decision will be entered</u>

for respondent.