T.C. Summary Opinion 2017-67

UNITED STATES TAX COURT

RANDALL L. GRAGO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13208-16S.                    Filed August 24, 2017.

Randall L. Grago, pro se.

<u>Michael S. Hensley</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $10,213 in petitioner's Federal income tax for 2013 and an accuracy-related penalty of $2,043 pursuant to section 6662(a). Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in California.

At the start of the trial, counsel for respondent informed the Court that respondent was no longer seeking an accuracy-related penalty for the year in issue. The issues remaining for decision are whether petitioner was engaged in a trade or business activity during the year in issue and, if so, whether he properly substantiated research expenses of $49,266 and travel expenses of $1,823, reported on Schedule C, Profit or Loss From Business. To the extent not discussed herein, other adjustments are computational and will flow from our decision in this case.

---

[1](...continued)
Revenue Code, as amended and in effect for 2013, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

## Background[2]

Petitioner was employed as a law enforcement officer in a variety of positions over a career that spanned about 23 years. He retired from law enforcement as a result of a medical disability in 1997.

## I. The California Patch Book

Petitioner began collecting law enforcement patches as a teenager. Law enforcement patches typically are embroidered designs that are sewn onto an officer's uniform.

When petitioner retired from law enforcement, he began to create an electronic database of his collection of law enforcement patches. At the time of trial the database comprised about 25,000 files, each of which includes a photograph of a patch and a statement or history about the law enforcement agency that issued the patch. Petitioner maintains the database on DVDs and on a website which he calls the "California Patch Book" (CPB). Petitioner actively buys and sells patches on eBay.

After establishing the CPB website, petitioner soon learned that he had little control over dissemination of the database. Consequently, he changed his practices by copyrighting the photographs of patches and charging subscribers a

---

[2]Some of the facts have been stipulated and are so found.

one-time fee of $799 for access to the entire database. At some point after 2007 petitioner purchased approximately 100 internet domain names generally related to law enforcement patches, and he uses those domain names as a means to redirect internet searches to a Facebook page which contains a limited amount of content from the CPB website. Petitioner has also attempted to promote and market the CPB by attending various trade shows, such as the National Police Collectors Show and the Porky D. Swine Show.

In 2013 petitioner decided to begin collecting law enforcement badges with the aim of creating a California Badge Book--akin to the CPB. Law enforcement badges are metal emblems normally pinned to an officer's uniform. Petitioner purchased numerous badges in 2013.

Beginning with the taxable year 2007 petitioner has included with each of his Federal income tax returns a Schedule C for the CPB activity. For 2007 through 2013 petitioner reported gross receipts, total expenses, and net losses from the CPB activity as follows:

| Year | Gross receipts | Travel expenses | Other expenses | Total expenses | Net losses |
|---|---|---|---|---|---|
| 2007 | $500 | -0- | $1,107 | $8,702 | ($8,202) |
| 2008 | 1,200 | $625 | 817 | 8,552 | (7,352) |
| 2009 | 950 | -0- | 156 | 8,037 | (7,087) |
| 2010 | 556 | -0- | -0- | 8,614 | (8,058) |
| 2011 | 1,500 | -0- | -0- | 9,766 | (8,266) |
| 2012 | 1,500 | 925 | 13,000 | 20,363 | (18,863) |
| 2013 | 500 | 1,823 | 49,266 | 55,544 | (55,044) |
| Total | 6,706 | 3,373 | 64,346 | 119,578 | (112,872) |

## II. Petitioner's 2013 Income Tax Return

Petitioner timely filed a Federal income tax return for 2013. He reported a relatively modest amount of income and, as mentioned above, attached to his tax return a Schedule C for the CPB activity. Petitioner acknowledged at trial that he is unfamiliar with proper tax accounting methods and that he did not keep complete and accurate records of the CPB activity.

### A. Gross Receipts

Petitioner reported gross receipts of $500 on Schedule C. He recalled that, although he may have collected subscription fees of approximately $8,000 in 2013 in connection with the CPB activity, he did not include that amount in gross receipts because he had "reinvested" those funds to purchase patches and badges.

Although petitioner actively bought and sold patches and badges, he retained some of these items in his personal collection.

### B. Research Expenses

As discussed above, petitioner purchased numerous law enforcement badges in 2013. On Schedule C for the CPB activity petitioner reported research expenses of $49,266, which represents the cost of the badges that he purchased that year. At the time of trial petitioner had not completed the California Badge Book and had not set a price that he would charge subscribers for access to the database.

### C. Travel Expenses

Petitioner reported travel expenses of $1,823 on Schedule C. Petitioner explained that he incurred these expenses as he traveled to meet with various persons to negotiate the purchase of additional patches and badges. Petitioner offered credit card statements to substantiate his travel expenses. He did not maintain a contemporaneous log identifying the persons he met with, the location of his meetings, or the distances that he traveled.

### D. Lack of Business Records

Petitioner did not maintain business records for the CPB activity, such as a general ledger or a separate bank account. He did not draft a business plan or a marketing plan, and he has not obtained an appraisal of the CPB electronic

database. He did not prepare financial projections, such as estimated annual income and expenses, nor did he prepare estimated annual operating budgets.

## Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).[3]

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

---

[3]Petitioner does not contend that the burden of proof should be shifted to respondent pursuant to sec. 7491(a), and there is no justification on this record for doing so.

I.  Section 183

Under section 183(a), if an activity is not engaged in for profit, then no deduction attributable to that activity is allowed except to the extent provided by section 183(b).  In pertinent part, section 183(b) allows those deductions that would have been allowable had the activity been engaged in for profit only to the extent of gross income derived from the activity (reduced by deductions attributable to the activity that are allowable without regard to whether the activity was engaged in for profit).

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."  Deductions are allowable under section 162 or under section 212(1) or (2) if the taxpayer is engaged in the activity with the "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 426-427 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981).

The existence of the requisite profit objective is a question of fact that must be decided on the basis of the entire record.  Elliott v. Commissioner, 84 T.C. 227, 236 (1985), aff'd without published opinion, 782 F.2d 1027 (3d Cir. 1986);

Dreicer v. Commissioner, 78 T.C. at 645; sec. 1.183-2(b), Income Tax Regs. In resolving this factual question, greater weight is given to objective facts than to a taxpayer's statement of intent. See Westbrook v. Commissioner, 68 F.3d 868, 875-876 (5th Cir. 1995), aff'g T.C. Memo. 1993-634; sec. 1.183-2(a), Income Tax Regs. For purposes of deciding whether the taxpayer has the requisite profit objective, profit means economic profit, independent of tax savings. Surloff v. Commissioner, 81 T.C. 210, 233 (1983).

Regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists. These factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the taxpayer's success in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.

No single factor, nor even the existence of a majority of factors supporting or rebutting the existence of a profit objective, is controlling. Id. Rather, all facts

and circumstances with respect to the activity are to be taken into account. Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b), Income Tax Regs.

A. Manner in Which Petitioner Carried On the Activity

If a taxpayer carries on an activity in a businesslike manner and maintains complete and accurate books and records, it may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. Keeping records only for purposes of preparing tax returns, however, is not indicative of a profit objective. See Rowden v. Commissioner, T.C. Memo. 2009-41; Kinney v. Commissioner, T.C. Memo. 2008-287.

Although petitioner was able to gather bank and credit card records for the purpose of identifying some CPB expenses, he did not maintain those records in a businesslike manner. Moreover, there is no indication that he maintained records with the aim of preparing profit projections, a break-even analysis, or a formal budget. This factor weighs against petitioner.

B. Expertise of Petitioner or His Advisers

Preparation for an activity by extensive study of its accepted business practices, or consultation with those who are expert therein, may indicate a profit objective where the taxpayer carries on the activity in accordance with such practices. Sec. 1.183-2(b)(2), Income Tax Regs. Although petitioner is very

knowledgeable about law enforcement patches and badges, he had no practical experience organizing or operating an electronic database for profit, nor did he consult with any experts on the subject. This factor weighs against petitioner.

C. Time and Effort Expended in Carrying On the Activity

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly if the activity does not have substantial personal or recreational aspects. Id. subpara. (3). Although we are persuaded that petitioner devoted substantial time and effort to the CPB activity, he also derived personal enjoyment from the activity. We consider this factor to be neutral.

D. Expectation That Assets May Appreciate

The term "profit" includes appreciation of the assets used in the activity. Id. subpara. (4). A taxpayer may intend to derive a profit from the activity when appreciation of the assets used in the activity is combined with income from the activity. Id.

Petitioner did not offer any evidence of the value of the CPB electronic database or that he expected it to appreciate. Consequently, this factor is neutral.

E.  Success in Carrying On Other Similar or Dissimilar Activities

The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that the activity in question was engaged in for profit, even though the activity is presently unprofitable.  Sec. 1.183-2(b)(5), Income Tax Regs.  Petitioner offered no evidence of his prior experience organizing or operating an electronic database for profit or managing a small business.  This factor is neutral.

F.  History of Income or Loss

 A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit.  Id. subpara. (6); see Golanty v. Commissioner, 72 T.C. at 427.  However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status, such continued losses, if not explainable, may indicate that the activity is not engaged in for profit.  Sec. 1.183-2(b)(6), Income Tax Regs.  The "goal must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years."  Bessenyey v. Commissioner, 45 T.C. 261, 273-274 (1965),

aff'd, 379 F.2d 252 (2d Cir. 1967); see Nissley v. Commissioner, T.C. Memo. 2000-178.

Petitioner incurred a significant loss in 2013, and the record shows that he experienced net losses in the six preceding taxable years. Although petitioner remains optimistic that the CPB and the fledgling badge book activities will eventually generate profits, there is no indication when or if the activities will generate profits sufficient to offset the cumulative losses that petitioner has incurred to date. In sum, petitioner's history of losses is indicative of a lack of profit objective. See Golanty v. Commissioner, 72 T.C. at 427; Ogden v. Commissioner, T.C. Memo. 1999-397, aff'd, 244 F.3d 970 (5th Cir. 2001). This factor weighs against petitioner.

G. Occasional Profits

The amount of profits in relation to the amount of losses incurred and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity may provide useful criteria in determining the taxpayer's intent. Sec. 1.183-2(b)(7), Income Tax Regs. As discussed above, the CPB activity has produced no profits and has generated substantial losses over an extended period. This factor weighs against petitioner.

- 14 -

H.  Financial Status

The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit.  Sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from sources other than the activity, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit. Id.

Petitioner's sources of income and capital are limited.  This factor weighs in petitioner's favor.

I.  Elements of Personal Pleasure or Recreation

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are elements of recreation or personal pleasure.  Sec. 1.183-2(b)(9), Income Tax Regs.

Considering the record as a whole, it is evident that petitioner enjoys and derives personal pleasure from the CPB activity.  This factor weighs against petitioner.

II. Conclusion

Considering all the facts and circumstances, we hold that petitioner did not conduct the CPB activity in a businesslike manner and he did not engage in the

activity with the requisite profit objective during the taxable year 2013.

Consequently, respondent's determination is sustained.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.