**F I L E D**
**United States Court of Appeals
Tenth Circuit**

**FEB 24 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DONALD L. WALFORD,

            Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

            Respondent-Appellee.

No. 04-9004
(T. C. No. 6506-86)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

        After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

*       This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Taxpayer-appellant Donald L. Walford, proceeding pro se, petitions this court for review of the decision of the United States Tax Court disallowing, under 26 U.S.C. §183, deductions for losses resulting from an investment in a limited partnership and assessing associated penalties and interest. Because the parties are familiar with the facts as set forth in the Tax Court's memorandum and opinion, *see Walford v. Commissioner*, 86 T.C.M. (CCH) 479, 2003 WL 22413166 (2003), we offer only a brief procedural summary.

On his federal tax returns for 1980 and 1981, Mr. Walford claimed losses resulting from his investment in Sav-Fuel Associates, a Connecticut limited partnership. After the Commissioner disallowed these losses and assessed certain additions to tax, Mr. Walford petitioned the Tax Court for redetermination.[1] Following trial, the Tax Court found that Mr. Walford's deduction for losses in 1981 arising from the Sav-Fuel investment was properly disallowed because the partnership did not have the requisite profit motive under 26 U.S.C. § 183.[2] The court further found that Mr. Walford was liable for an addition to tax and

---

[1]  Mr. Walford's case was initially assigned to Judge Charles Halpern who was presiding over *Gianaris v. Comm'r*, 64 T.C.M. (CCH) 1229, 1992 WL 315448 (1992), a test case involving partnership ventures similar to Sav-Fuel. Mr. Walford's case was abated pending the decision in *Gianaris* and, after various continuances and settlement negotiations, was returned to the general docket and set for trial in 2003.

[2]  Before trial, the Commissioner conceded that he was barred by the statute of limitation from asserting a deficiency for the 1980 tax year.

-2-

increased interest. In his brief to this court, Mr. Walford does not argue that these penalties were erroneously assessed. He has therefore waived these arguments, *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998), and we will consider only his arguments challenging the Tax Court's conclusion that the Sav-Fuel partnership was not engaged in a profit-making activity.

Our jurisdiction to review the Tax Court's decision arises under 26 U.S.C. § 7482(a), *Hildebrand v. Comm'r*, 28 F.3d 1024, 1026 (10th Cir. 1994), and we affirm.[3] Whether Sav-Fuel was intended as a profit-making venture is a question of fact that this court will not disturb unless clearly erroneous. *Cannon v. Comm'r*, 949 F.2d 345, 349 (10th Cir. 1991). A finding of fact is clearly erroneous only when, on all the evidence, we are definitely and firmly convinced that a mistake has been made. *Id.* After reviewing the record, we conclude that the Tax Court's finding that Sav-Fuel lacked an actual profit objective is not clearly erroneous.

As we explained in *Hildebrand*, 28 F.3d at 1026-27, not all costs associated with a business venture are necessarily deductible. "For a deduction to be

---

[3] The Tax Court's decision finally disposing of all claims with respect to all parties was entered on January 20, 2004. Section 7483 of title 26 requires that a notice of appeal be filed within ninety days after the entry of the Tax Court's decision. Because Mr. Walford's notice of appeal is postmarked April 15, 2004, it is considered filed as of that date and is timely under 26 U.S.C. §7502.

allowed it must be shown that the activity engaged in was operated with an actual and honest profit objective." *Id.* at 1027 (citing 26 U.S.C. §183). "The determination of whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. . . . The taxpayer's objective must be to achieve an economic profit independent of tax considerations." *Gianaris v. Comm'r*, 64 T.C.M. (CCH) 1229, 1992 WL 315448 at 5 (1992) (citations omitted). The taxpayer has the burden to establish that "profit was the dominant or primary objective of the venture," *Hildebrand*, 28 F.3d at 1027 (quotation omitted), and, in the case of a partnership, the relevant economic motives are those of the partnership, not the individual investor, *id.* Courts particularly examine the identity of the individuals operating the partnership "whose expertise is relied upon in making partnership decisions." *Gianaris*, 1992 WL 315448 at 5.

Sav-Fuel was ostensibly formed to acquire an energy-management system (EMS) to be installed in the California manufacturing plant of Gould, Inc. The components of the EMS, including heat exchangers, fans, valves, and various control devices, would supposedly provide a simple, yet technologically sophisticated, method of energy management. Three other entities were involved in the structuring of this venture, the most relevant of which was Consumer Energy Funding (CEF). In 1980, CEF sold the EMS to Dard Systems, Inc., an

-4-

entity controlled by Sav-Fuel promoter Richard Gangel, for $337,500. [4] By the time the equipment was purchased by Sav-Fuel later in 1980, the purchase price had escalated to $10,350,000. The bulk of that sum was to be paid by a nonrecourse note of $9,004,500, payable solely from eighty percent of the gross income actually received by Sav-Fuel from the use of the EMS. [5] All of the entities involved in this scheme were organized in 1980, and none of the general partners or promoters had anything more than limited experience in the field of

---

[4] Mr. Gangel had a long history as a promoter of tax shelters. In *Gangel v. Comm'r*, 62 T.C.M. (CCH) 319, 1991 WL 145339 (1991), the Tax Court noted that:

> Since 1974 [Mr. Gangel] has been a promoter of numerous tax shelters involving equipment leasing, real estate, entertainment, and art. The tax shelters promoted by [Mr. Gangel] have been the subject of previous Tax Court proceedings. [Mr. Gangel's] previous shelters have raised in excess of $400,000,000.
>
> A major tax shelter [Mr. Gangel] was involved in was the Energy Management System (EMS) tax shelter, which encompassed 15 corporations, approximately 80 transactions, and approximately 2,000 investors. In 1985 [Mr. Gangel] entered into a consent agreement with the Government to cease EMS and other tax shelter activities. [Mr. Gangel] paid a penalty of $320,000 in connection with the consent agreement.

1991 WL 145339 at 1 (footnote omitted).

[5] Sav-Fuel was entitled to only eighty-five percent of half of the net savings realized by Gould as a result of the installation of the EMS. Taking into account Sav-Fuel's obligation on the note and other expenses, Sav-Fuel was entitled to only 8.5 percent of any savings generated by the EMS.

energy conservation and management. There was no evidence that the EMS was ever installed at Gould or ever generated any actual energy savings.

The Tax Court's conclusion that Sav-Fuel was not intended as a profit-making venture was based primarily on five objective factors: 1) the grossly inflated sales price paid by Sav-Fuel for the EMS; 2) the large amount of the nonrecourse note with payment of that note limited to a very speculative income source; 3) the lack of expertise in the energy-management field of Sav-Fuel's general partner and promoters; 4) the application of the factors set out in Treasury Regulation §1.183-2(b); and 5) the calculation of a negative net present value for Sav-Fuel.

Mr. Walford takes exception only to the Tax Court's calculation of Sav-Fuel's net present value. This argument is unavailing, however, because we find the other bases supporting the Tax Court's decision regarding Sav-Fuel's profit motive to be correct. This decision is therefore affirmable irrespective of any present value analysis.

A key indicator of a venture entered into primarily to shelter taxes is the presence of a grossly inflated purchase price for the asset involved. *Soriano v. Comm'r*, 90 T.C. 44, 54 (1988). The fact that Sav-Fuel purchased the EMS for $10,350,000 only a few months after the same equipment sold for $337,500 indicates that Sav-Fuel's objective was to achieve grossly inflated tax benefits,

-6-

not to make an economic profit. *See Gianaris*, 1992 WL 315448 at 8. Further, we agree with the Tax Court that the nature of the financing used here, a twenty-five-year nonrecourse note with interest at well below that paid by government bonds at the time and whose payment was limited to funds received from speculative savings to be generated by the EMS, meant "that Sav-Fuel would generate artificially inflated tax benefits while at the same time virtually assuring that it would never repay the note in full." *Walford,* 2003 WL 22413166 at 15.

Mr. Walford does not dispute that the general partner and the promoters of Sav-Fuel had only limited experience, if any, in energy management, and that he himself had none. Further, while Winston Frost, the general partner of Sav-Fuel, had died by the time of trial, none of the other principals testified, permitting the Tax Court to infer that their testimony would not have been favorable to Mr. Walford. *See Wichita Terminal Elevator Co. v. Comm'r*, 6 T.C. 1158, 1165 (1946), *aff'd*, 162 F.2d 513, 516 (10th Cir. 1947). [6]

Turning to the Treasury Regulations, the Tax Court applied the facts of this case to the nine nonexclusive factors listed therein to further support its

---

[6] We note that before his death, Mr. Frost was the tax matters partner of Harmonic Associates, a Florida limited partnership, similarly found to lack a profit motive for purposes of 26 U.S.C. §183. *See Gianaris*, 1992 WL 315448 at 8.

conclusion that Sav-Fuel was not intended to earn an economic profit. Those

factors are:

> (1) the extent to which the taxpayer carries on the activity in a businesslike manner; (2) the taxpayer's expertise or his reliance on the advice of experts; (3) the time and effort the taxpayer expends in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the taxpayer's success in similar activities; (6) the taxpayer's history of income or loss in the activity; (7) the amount of occasional profits, if any; (8) the taxpayer's financial status; and (9) the elements of personal pleasure or recreation.

*Hildebrand,* 28 F.3d at 1027 (citing Treas. Reg. §1.183-2(b)).

In addition to the findings discussed above, the Tax Court found, after

applying the regulation, that Sav-Fuel had not been operated in a business-like

manner, since no books, records, or financial statements had been offered as

evidence. Likewise, there was no evidence that Mr. Walford expended any time

and/or effort in carrying on the business of Sav-Fuel. No evidence showed that the

EMS was expected to appreciate in value or that Sav-Fuel had any success in

similar energy-saving ventures or ever earned a profit from EMS-related activity.

We have reviewed the record in this case and find none of these conclusions to be

clearly erroneous.

As a final matter and as an additional basis upon which to justify its

ultimate conclusion, the Tax Court engaged in a present-value analysis of Sav-Fuel

using a useful life for the EMS of twenty-five years. Mr. Walford takes exception

to the twenty-five-year useful-life assumption and urges this court to reverse on that basis. As noted above, however, there was ample evidence before the Tax Court to support its conclusion, even without the present-value analysis. We will, nonetheless, briefly address Mr. Walford's contentions.

Mr. Walford argues that the reference in Sav-Fuel's private placement memo to a useful life refers to the double-declining depreciation schedule of seven years and not to the actual, expected useful life of the equipment. He further argues that the chart in the private placement memo reflecting a twenty-five year useful life refers to the life of the nonrecourse note, not to the equipment. Finally, he points to his expert's opinion that the EMS equipment would last at least thirty years.

The Tax Court refused to accord any weight to the expert's conclusion, citing its lack of authority, factual support, or data and noting that the opinion was based on nothing more than the expert's personal belief. Indeed, the expert admitted he had never seen the EMS and was unfamiliar with its design. He further acknowledged that some of the equipment could have become obsolete over the years. We do not find any error in the Tax Court's refusal to credit this opinion. Since Mr. Walford had the burden of proof, he is left with no evidence to

sustain his contention that the useful life of the EMS was greater than twenty-five years. [7]

The different hypotheses conjured by Mr. Walford to generate a theoretical profit for Sav-Fuel, assuming a useful life of more than twenty-five years, are too speculative to overcome the abundant evidence relied upon by the Tax Court to find no profit motive here.

The decision of the Tax Court is AFFIRMED. The mandate shall issue forthwith.

 

                 Entered for the Court

 

                 Michael R. Murphy
                 Circuit Judge

---

[7] Mr. Walford cites *Gianaris* to support his contention that the EMS had a useful life longer than twenty-five years. In *Gianaris*, however, the relevant comparison is to the equipment used by Computerized Energy Associates (CEA), the useful life of which the Tax Court found to be twenty-five years based on assumptions in the CEA offering memorandum. The thirty-five year life cited by Mr. Walford refers to the equipment of Harmonic Associates, which included a retrofitted annealing furnace and a new woodchip-burning boiler plant, equipment far different from the EMS purchased by Sav-Fuel.