# United States Tax Court

T.C. Memo. 2024-75

ROBERT DEAN MAZOTTI AND DEBRA LEA JONES-MAZOTTI,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 18576-22.                                    Filed July 25, 2024.

————

Robert Dean Mazotti and Debra Lea Jones-Mazotti, pro se.

*Michael T. Garrett* and *Kyu-Jung Kahn*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

JONES, *Judge*:  Debra Lea Jones-Mazotti and Robert Dean Mazotti[1] seek redetermination of deficiencies in federal income tax determined by the Internal Revenue Service (IRS) for the 2018, 2019, and 2020 taxable years (tax years at issue). The issues for decision are (1) whether Ms. Jones-Mazotti's activities associated with her writing and research were entered into for profit, and, if so, whether she is entitled to deduct purported business expenses associated with those activities; and (2) whether the Mazottis are liable for penalties under section 6662.[2]

---

[1] We sometimes refer to Ms. Jones-Mazotti and Mr. Mazotti as the Mazottis.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulatory references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[\*2]**    For the reasons set forth below, we hold that Ms. Jones-Mazotti did not engage in writing or research activities for profit, and, therefore, she is not entitled to deduct the purported business expenses associated with those writing activities for the tax years at issue. Finally, we will sustain the IRS's accuracy-related penalties.

## FINDINGS OF FACT

The first part of trial in this case took place during a Denver, Colorado, trial session. The second part of trial occurred during a special remote trial session. We incorporate by this reference the stipulations of fact, the stipulated exhibits, and any exhibits admitted at trial.

The Mazottis resided in Colorado when they timely petitioned this Court.

I.    *Background*

A.    *The Mazottis' Earnings for the Tax Years at Issue*

Mr. Mazotti worked for the City and County of Denver for tax year 2018, but he retired and received retirement distributions for tax years 2019 and 2020. Ms. Jones-Mazotti worked for the Jefferson County School District during the tax years at issue. In 2019 and 2020, she also received wages from King Soopers. Further, Ms. Jones-Mazotti received gambling winnings for the tax years at issue, but the Mazottis failed to report those winnings on their returns for the tax years at issue. In tax year 2020, Ms. Jones-Mazotti received nonemployee compensation of $1,000 from Prevagen, Inc. (Prevagen).

B.    *Ms. Jones-Mazotti's Writer-Researcher Activities*

During the tax years at issue, the Mazottis filed Schedules C, Profit or Loss From Business, for "Writer Researcher" activities. According to Ms. Jones-Mazotti, she has been writing her entire life. Her training consists of technical writing, writing workshops, and various community college courses related to writing, journalism, and photography. She also reports on-the-job training as a technical writer for the Federal Bureau of Investigation, Western Gas Resources, and North Jeffco Recreation.

In addition, Ms. Jones-Mazotti engaged in self-study about writing and publishing by reading books. She also claimed to have consulted with famous writers regarding her work, but she could not

[*3] recall whether she spoke with those authors about minimizing expenses related to her writing.

Ms. Jones-Mazotti has claimed business expense deductions related to her writer-researcher activities since approximately 1996 or 1997, and she identified 2022 as the first year in which she earned a profit related to those activities. Despite her tenure as a professed writer-researcher, she does not have a business plan for her writer-researcher activities.

Ms. Jones-Mazotti claims that she has engaged in several different types of writer-researcher activities, including writing books, articles, and commercials, as well as travel for research and photography. We will discuss each in turn. We will also address Ms. Jones-Mazotti's work with the Jefferson County School District.

###### 1. *Books*

When she began writing, Ms. Jones-Mazotti retained an agent to assist with her publishing journey. But after concluding that the agent was "less than ethical," she decided to no longer work with the agent. She submitted several books to publishers in the early 1990s, but she received numerous rejection letters.

Ms. Jones-Mazotti's testimony about attempts to publish in the nearly 30 years since—including during the tax years at issue—was inconsistent. For example, she first testified that, during the tax years at issue, her time was mostly limited to writing "articles and storytelling and online," not publishing efforts. She later testified that she submitted "every book" to potential publishers during the tax years at issue. But she could not recall any specific books that she queried to publishers and then stated it was "mostly articles" during the tax years at issue.

Ms. Jones-Mazotti claims to have self-published approximately six books through Shutterfly. Her books include *If You Grew Up In*, *Bountiful Journey*, *Can You Go Home Again*, and *Filthy Fingers*. She also collaborated on a book with her daughter titled *How to be a Bridesmaid*.

*Filthy Fingers* was included as an exhibit, and the document identified as a book appears to be approximately two pages long. Other purported books were also submitted as exhibits, including *How Do I Grow?* (which appears to be, at most, two pages, double-spaced, taking

**[*4]** up less than half of each page) and the *Ing Siblings* (which is, at most, one page, double-spaced, taking up less than half of the page).

Ms. Jones-Mazotti also represented that some of her work has been made available at a young writers' conference. But her testimony was less than clear when asked whether she offers her books for sale. At first, she stated "Yes. Yes." But when asked to explain those efforts, she stated: "[W]ell, for my own purposes, no, [certain books are] not for sale. They're what I use for education-wise. For other purposes, yes, I do try and see if I can submit that." When pressed further, Ms. Jones-Mazotti stated that she took her books to conferences. When pressed again and asked whether she was offering her books for sale at the conferences, Ms. Jones-Mazotti responded: "Yes, in a way, you are, because you're showing what you've done, and you're hoping to find somebody that's wanting to publish or maybe even use those as those beginner books." On this inconsistent testimony, the Court cannot conclude that Ms. Jones-Mazotti offered her books for sale in the tax years at issue.

2. *Articles*

In addition to her purported writer-researcher activities related to books, Ms. Jones-Mazotti claims to write articles. For example, she testified that she has been published in numerous newspapers and online sources over the years. She also claims that local television stations have aired her work. But there is no evidence regarding when most of these alleged publications occurred, including whether they were published during the tax years at issue.

However, one newspaper article was apparently published in 2008, long before the tax years at issue. And based on the exhibits in the record, it appears that at least some of these claimed publications are opinion letters or social media posts. For example, one purported publication was a post on Facebook about Ms. Jones-Mazotti's personal experience. Other purported articles appear to be opinion posts on TripAdvisor.

For 2018, Ms. Jones-Mazotti reported $30 of income from her writer-researcher activities. Although she could not recall precisely, she testified that this income may have been from a *Reader's Digest* article that was published or from another writing submission. Ms. Jones-Mazotti reported $15 in gross receipts for writer-researcher activities for 2019, but she does not know the source of that income.

**[\*5]** In addition, Ms. Jones-Mazotti reports that she has written previews and reviews for a company called Theatrical Entertainment Services. She states that some of this work was used by the company during the tax years at issue "until probably COVID." But the record does not contain any evidence of these publications, other than Ms. Jones-Mazotti's testimony.

### 3.    *Commercials*

Ms. Jones-Mazotti testified that she wrote a national commercial for the over-the-counter medication Prevagen in 2018 or 2019. According to her, she wrote a testimonial about how Prevagen has helped her, and the pharmaceutical company decided to use Ms. Jones-Mazotti's story in its advertising. Ms. Jones-Mazotti also starred in the commercial, which was filmed in 2020.

At trial, Ms. Jones-Mazotti produced a spokesperson contract, indicating that she was paid by Prevagen for being a spokesperson, not for writing a commercial. According to her, she was paid for the writing work in 2020, and she was paid for appearing in the commercial in a later year. But although 2018 and 2019 are included in the tax years at issue, there is no evidence—beyond Ms. Jones-Mazotti's testimony—that she was paid for writing a pharmaceutical commercial in those years.

### 4.    *Research Trips*

During the tax years at issue, Ms. Jones-Mazotti took numerous trips, expenses for which were included on her Schedules C as deductions claimed for writer-researcher activities. *See infra* Part I.C. During these trips to various locations—such as California and Florida—she purportedly conducted research for books, articles, and scavenger hunts she was creating. She also traveled to Hawaii in 2020 to allegedly study macadamia nuts for her books. Some members of her family, including her husband and daughter, typically traveled with her on these trips. During these trips, Ms. Jones-Mazotti purportedly took photos of fruits, vegetables, and trees for her writer-researcher activities.

Ms. Jones-Mazotti testified that she traveled to California and to Disney World to research a family trivia game she wanted to write. However, Ms. Jones-Mazotti also admitted that the trip to Disney World coincided with a high school football function for one of her sons, where he played a football game.

**[*6]**    In addition to purported research trips related to her books, Ms. Jones-Mazotti conducts research regarding missing persons. However, to date, she has opted to not publish articles on missing persons because she does not want to exploit them. Nonetheless, she claims travel expense deductions related to her missing persons research activities.

### 5.    *Teaching Role*

During the tax years at issue, Ms. Jones-Mazotti worked at the Jefferson County School District. In August 2023, she obtained a new position at the school, assisting children with reading comprehension. She believes she obtained the position because of her writing and research skills. However, Ms. Jones-Mazzotti is employed by the school district; this work is not connected with her own business.

Although her testimony is not a model of clarity, Ms. Jones-Mazotti testified that she drafted books for her students, including *How Does it Grow* and *Where Does It Grow*. Ms. Jones-Mazotti describes these books as a "series," and she stated that they consist of approximately seven to ten pages per book, stapled on half sheets of paper, and laminated at the school where she works. Ms. Jones-Mazotti stated that she uses these books to help tutor her students. Further, these books were laminated by Ms. Jones-Mazotti or other paraprofessionals at her school.

She states that she is still trying to publish these books, including through the school librarian. Although Ms. Jones-Mazotti identifies these books as self-published books, it is evident that they were produced as part of her work as an educator, not as part of her writer-researcher activities.

### C.    *Schedule C Reported Expenses*

A summary of Ms. Jones-Mazotti's reported gross receipts and total expenses for the writer-researcher activities for the tax years at issue is set forth below:

| Taxable Year | Gross Receipts | Total Expenses |
|---|---|---|
| 2018 | $30 | $61,523 |
| 2019 | 15 | 63,019 |
| 2020 | 1,000 | 62,470 |

[*7] Reported expenses generally include advertising, supplies, repairs and maintenance of petitioners' vehicles, car and truck expenses, travel expenses, mortgage interest deductions, and insurance. A summary of the reported Schedule C expenses for the tax years at issue is listed below:

| *Item* | *2018* | *2019* | *2020* |
|---|---|---|---|
| Advertising | $1,388 | $1,526 | $1,517 |
| Supplies | 9,889 | 9,895 | 7,676 |
| Repairs/Maintenance | 9,919 | 9,902 | 8,417 |
| Car/Truck Expenses | 14,117 | 14,370 | 13,808 |
| Travel | 26,210 | 27,326 | 18,898 |
| Interest – Mortgage | 0 | 0 | 10,426 |
| Insurance (other than health) | 0 | 0 | 1,728 |

Ms. Jones-Mazotti did not keep formal books and records for her writer-research activities for any of the tax years at issue. She has never run a profit-and-loss statement.

The Mazottis did not submit receipts that equal all claimed deductions for the tax years at issue. However, some receipts were submitted as exhibits. These receipts were for a variety of personal items: Hobby Lobby for crafts and frames; Wal-Mart for various items such as storage bins, food, clothing, and allergy medications; Target for art, electronics, and clothing; and Home Depot for home repair supplies. The Mazottis also submitted receipts for vehicle maintenance, including new tires and transmission work on their personal vehicle.

II.    *The IRS's Examination*

The IRS examined petitioners' returns for the tax years at issue. The Commissioner determined that Ms. Jones-Mazotti's writer-researcher activities were not engaged in with the intent to make a profit. The IRS also determined that Ms. Jones-Mazotti failed to substantiate the reported expenses for the writer-researcher activities. The IRS also determined that petitioners are liable for accuracy-related penalties due to negligence for the tax years at issue and for

[*8] substantial understatements of income tax for taxable years 2018 and 2019.[3]

On May 18, 2022, the IRS issued a Notice of Deficiency for the tax years at issue. The deficiency and the penalty for each tax year at issue are set forth below:

| Year | Deficiency | § 6662 Penalty |
|---|---|---|
| 2018 | $11,698 | $2,340 |
| 2019 | 11,173 | 2,235 |
| 2020 | 4,998 | 1000 |

## OPINION

### I. *Burden of Proof*

The determinations in a notice of deficiency bear a presumption of correctness, *see Welch v. Helvering*, 290 U.S. 111, 115 (1933), and the taxpayer generally bears the burden of proving them erroneous in proceedings in this Court, *see* Rule 142(a)(1). The taxpayer also bears the burden of proving entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). Thus, a taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is provided for by statute and must maintain records sufficient to enable the Commissioner to determine the correct tax liability. *See* § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976); Treas. Reg. § 1.6001-1(a).

### II. *Evaluation of Evidence*

In deciding whether a taxpayer has carried her burden of proof, witness credibility is an important consideration. *Ishizaki v. Commissioner*, T.C. Memo. 2001-318, 2001 WL 1658189, at *7. "[T]he distillation of truth from falsehood . . . is the daily grist of judicial life."

---

[3] The Notice of Deficiency in this case also determined accuracy-related penalties due to valuation misstatements. However, respondent appears to have abandoned that position. *See, e.g.*, *Shuman v. Commissioner*, T.C. Memo. 2018-135, at *21 n.13 (citing *Mendes v. Commissioner*, 121 T.C. 308, 312–13 (2003) (observing that an argument not made by a party in a brief is deemed abandoned)), *aff'd*, 774 F. App'x 813 (4th Cir. 2019).

**[\*9]** *Diaz v. Commissioner*, 58 T.C. 560, 564 (1972). "As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe." *Kropp v. Commissioner*, T.C. Memo. 2000-148, 2000 WL 472840, at \*3.

Generally, we found Ms. Jones-Mazotti's testimony to be self-serving and lacking in credibility and candor. Based on our evaluation of her demeanor at trial—as well as her inconsistent testimony—we found much of her testimony implausible. When pressed to explain inconsistencies, she readily created a new story to justify her claimed expense deductions. But, ultimately, her testimony failed to corroborate her alleged writer-researcher business activities. We will now discuss those activities.

III.  *Writer-Researcher Activities*

First, we determine whether Ms. Jones-Mazotti's writer-researcher activities were engaged in for profit and, if necessary, whether she is entitled to any deductions for expenses associated with those activities.

A.  *Analytical Framework*

Section 183(a) provides generally that, if an activity is not engaged in for profit, "no deduction attributable to such activity shall be allowed," except as provided in section 183(b). *See Hendricks v. Commissioner*, 32 F.3d 94, 97 (4th Cir. 1994), *aff'g* T.C. Memo. 1993-396; *see also Keeler v. Commissioner*, 243 F.3d 1212, 1219–20 (10th Cir. 2001) ("[T]he general test for whether an individual is engaged in a 'trade or business' under the Code is whether the primary purpose of the activity is to make a profit."), *aff'g Leema Enters., Inc. v. Commissioner*, T.C. Memo. 1999-18. Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

Unless otherwise stipulated by the parties, an appeal in this case would lie in the U.S. Court of Appeals for the Tenth Circuit. *See* § 7482(b). The Tenth Circuit has held that for a business deduction to be allowed, the taxpayer must show that "the activity engaged in was operated with an actual and honest profit objective." *Hildebrand v. Commissioner*, 28 F.3d 1024, 1026–27 (10th Cir. 1994), *aff'g Krause v. Commissioner*, 99 T.C. 132 (1992). "While the taxpayer's expectation of profit need not be reasonable, it must be in good faith." *Rowden v.*

**[\*10]** *Commissioner*, T.C. Memo. 2009-41, 2009 WL 415601, at \*4 (citing *Allen v. Commissioner*, 72 T.C. 28, 33 (1979)).

To determine whether the activity was engaged in for profit, "[t]he test is whether profit was the dominant or primary objective of the venture." *Hildebrand v. Commissioner*, 28 F.3d at 1027 (citing *Cannon v. Commissioner*, 949 F.2d 345, 350 (10th Cir. 1991), *aff'g* T.C. Memo. 1990-148). Whether the requisite profit objective exists is determined by looking at the surrounding facts and circumstances. *Id.* (citing Treas. Reg. § 1.183-2(b)). Although the relevant inquiry concerns a taxpayer's subjective intent, objective evidence may be used to establish intent. *Nickeson v. Commissioner*, 962 F.2d 973, 976 (10th Cir. 1992), *aff'g Brock v. Commissioner*, T.C. Memo. 1989-641. But "a taxpayer's statement of intent is given less weight than objective factors in determining such intent." *Cannon v. Commissioner*, 949 F.2d at 351 n.8; *see also* Treas. Reg. § 1.183-2(a) ("In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent.").

The factors listed in Treasury Regulation § 1.183-2(b) are relevant to an analysis of whether a taxpayer engages in activity with the objective of realizing a profit. *Hildebrand v. Commissioner*, 28 F.3d at 1027. The factors are (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. *See* Treas. Reg. § 1.183-2(b).

These factors are nonexclusive, and no one factor—or number of factors—is dispositive. *Hendricks v. Commissioner*, 32 F.3d at 98; *see also Golanty v. Commissioner*, 72 T.C. 411, 426 (1979), *aff'd,* 647 F.2d 170 (9th Cir. 1981) (unpublished table decision). Instead, all facts and circumstances must be considered, and more weight may be given to some factors than to others. *See Dunn v. Commissioner*, 70 T.C. 715, 720 (1978), *aff'd,* 615 F.2d 578 (2d Cir. 1980). Further, the taxpayer bears the burden of proving that the activity was engaged in for profit. *Walford v. Commissioner*, T.C. Memo. 2003-296, 2003 WL 22413166, at \*3, *aff'd,* 123 F. App'x 952 (10th Cir. 2005).

**[*11]** B.     *Application of the Caselaw and Regulatory Factors*

Although our analysis is focused on Ms. Jones-Mazotti's subjective intent, it is informed by the objective indicia set forth in the regulations and outlined above. *See Nickeson v. Commissioner*, 962 F.2d at 976. Aside from Ms. Jones-Mazotti's self-serving testimony that her writer-researcher activities were conducted for profit, little else counsels in favor of a finding of a profit motive. Given the caselaw and the nine factors set forth in the regulations, and on the basis of all the facts and circumstances presented, we conclude that her writer-researcher activities were not engaged in for profit during the tax years at issue.

We will now turn to explaining our conclusion in greater detail, examining the nine factors in the regulations.

1.     *Manner in Which Activity Is Conducted*

A taxpayer who works in a "businesslike manner" and "maintains complete and accurate books and records" is more likely to have a profit motive. Treas. Reg. § 1.183-2(b)(1). A "businesslike manner" can be inferred from the taxpayer's maintenance of "complete and accurate books and records," *id.*, and a reasonable business plan, *Den Besten v. Commissioner*, T.C. Memo. 2019-154, at *20 ("Having a business plan may suggest that a taxpayer conducted the activity in a businesslike manner."). Additionally, whether the taxpayer conducts the activity "in a manner substantially similar to other activities of the same nature which are profitable" and whether the taxpayer changes "operating methods, adopt[s] . . . new techniques or abandon[s] . . . unprofitable methods in a manner consistent with an intent to improve profitability" are questions we consider in analyzing this factor's application to the instant case. Treas. Reg. § 1.183-2(b)(1).

The record demonstrates that Ms. Jones-Mazotti did not conduct her writing activities in a businesslike manner. She admitted that she does not have a business plan. Further, she has never run a profit-and-loss statement, and she failed to keep accurate books and records related to her writer-researcher activities and their purported business expenses. She was unable to produce substantiation for most of the reported expenditures associated with the writing activities.

Finally, there is no evidence before the Court regarding whether Ms. Jones-Mazotti conducted her writing activities in a manner similar to other writing activities that are profitable, nor is there any evidence

**[\*12]** regarding how—or whether—Ms. Jones-Mazotti abandoned unprofitable techniques in favor of profitable techniques.

Thus, this factor weighs heavily against the Mazottis.

### 2. *Expertise of the Taxpayers or Their Advisers*

A taxpayer's preparation for an activity by extensive study of its accepted business, economic, and scientific practices, or consultation with experts in the activity, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices. Treas. Reg. § 1.183-2(b)(2). Where the taxpayer has such knowledge or advice but does not carry on the activity in accordance with good practice, a lack of intent to derive profit may be indicated. *Id.* Ms. Jones-Mazotti represented that she has been writing her entire life. But despite her self-serving testimony—which we did not find credible—there is no evidence that Ms. Jones-Mazotti engaged in extensive studies about how to conduct a writing business.

Consulting with industry experts and studying accepted business practices when preparing to engage in an activity may suggest a profit motive. *See id.* Although Ms. Jones-Mazotti stated that she consulted "famous authors," there is no credible evidence that any author or other expert offered Ms. Jones-Mazotti expertise or advice about operating a writer-researcher business. Indeed, she could not recall whether she spoke with those authors about minimizing expenses related to her writing.

This factor weighs against the Mazottis.

### 3. *Taxpayer's Time and Effort*

When a taxpayer devotes considerable time and effort to an activity, "particularly if the activity does not have substantial personal or recreational aspects," that devotion may indicate that the taxpayer had a profit motive. Treas. Reg. § 1.183-2(b)(3). Further, when a taxpayer "withdraw[s] from another occupation to devote most of his energies to the activity," that also may support a finding that the taxpayer had a profit motive. *Id.* Even when a taxpayer devotes only limited time to an activity, if the taxpayer "employs competent and qualified persons to carry on such activity," then that too may indicate a profit motive. *Id.*

**[\*13]** Ms. Jones-Mazotti testified that she has spent her entire life writing. However, the record is devoid of evidence as to precisely how much time she spent on the writer-researcher activities during the tax years at issue. Further, although Ms. Jones-Mazotti testified inconsistently about the work she produced during the tax years at issue, we found her testimony self-serving. For example, Ms. Jones-Mazotti stated that she traveled extensively to conduct research for her books. But the record reflects that Ms. Jones-Mazotti reported expenses from personal vacations as business expenses on her tax returns and used her interest in writing to justify these claimed deductions.

This factor also weighs against the Mazottis.

### 4. *Expectation of Appreciation in Value*

Although a taxpayer receives no income from operating her enterprise, she may intend to derive a profit from the potential appreciation of her business assets. *See* Treas. Reg. § 1.183-2(b)(4). There is no evidence that Ms. Jones-Mazotti has any business assets. This factor is neutral.

### 5. *Success of the Taxpayer in Carrying On Other Similar Activities*

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable." Treas. Reg. § 1.183-2(b)(5). Ms. Jones-Mazotti did not present any evidence demonstrating that she has had business success in similar activities, turning them from unprofitable to profitable. We acknowledge that Ms. Jones-Mazotti testified that she was paid for writing a national pharmaceutical commercial. However, the evidence before the Court indicates that she was paid for being a spokesperson for giving a testimonial about how the medicine helped her. There is no evidence—beyond Ms. Jones-Mazotti's self-serving statements—that she was paid to write a national pharmaceutical commercial.

To the extent that Ms. Jones-Mazotti's testimony about her employment at the Jefferson County Schools can be construed as supporting this factor, we do not find it persuasive. There is no evidence that Ms. Jones-Mazotti's employment at the Jefferson County School District involves sound and customary business practices that can be transferred to a writer-researcher business. Moreover, this employment

[*14] began many years after Ms. Jones-Mazotti allegedly started her business.

Accordingly, this factor weighs against the Mazottis.

### 6. *History of Income or Losses*

A series of losses during the startup stage of an activity may not necessarily prove that an activity is not engaged in for profit. *See* Treas. Reg. § 1.183-2(b)(6). However, prolonged periods of losses following the initial startup phase of an activity may indicate that the taxpayer does not have a profit motive. *Id*. Nonetheless, where losses are due to "customary business risks or reverses" or to "unforeseen or fortuitous circumstances which are beyond the control of the taxpayer," then this inference does not typically arise. *Id*. Examples of "fortuitous circumstances" include "drought, disease, fire, theft, weather damages, . . . or depressed market conditions." *Id*.

Ms. Jones-Mazotti testified that she began her purported writer-researcher activities in the mid-1990s and first made a profit nearly 30 years later in 2022. For the tax years at issue, she reported substantial losses associated with the writer-researcher activities. For example, for 2018 she reported a loss of $61,493 on gross income of $30 and in 2020 a loss of $61,470 on gross income of $1,000. *See supra* p. 6. The record does not support Ms. Jones-Mazotti's claim that she has made a profit from her writer-researcher activities. Further, the prolonged period of loss over 30 years suggests that Ms. Jones-Mazotti was not engaged in the writer-researcher activity with the intent to make a profit.

Thus, this factor also weighs against the Mazottis.

### 7. *Amount of Occasional Profit*

In an otherwise money-losing venture, a taxpayer's derivation of some profits may support the existence of a profit motive. *See* Treas. Reg. § 1.183-2(b)(7). An "occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit." *Id*. Ms. Jones-Mazotti did not purportedly make a profit until 2022, nearly 30 years after she first started her writer-researcher activities. In contrast, she generated extremely large losses exceeding $60,000 for each of the tax years at issue, all while claiming minor income of $30 for 2018, $15 for 2019, and $1,000 for 2020. The record shows clearly that the Mazottis reported

**[\*15]** $1,045 in gross receipts and $187,012 in expenses, resulting in a total loss of $185,967 over the three tax years at issue.

This factor weighs heavily against the Mazottis.

### 8. *Taxpayer's Financial Status*

When evidence shows that a taxpayer has substantial income or capital at his disposal from sources other than the activity in question, that evidence may indicate that he did not enter into that activity with a profit motive. *See* Treas. Reg. § 1.183-2(b)(8). This is particularly true if the losses from the activity generate substantial tax benefits. *Id.*

The Mazottis did not earn substantial income during the tax years at issue, earning less than $100,000 for each of the tax years at issue. Nonetheless, their reported losses from the writer-researcher activities would produce a substantial tax benefit.

Thus, this factor also weighs against the Mazottis.

### 9. *Elements of Personal Pleasure or Recreation*

Finally, when a taxpayer derives personal pleasure from an activity or finds it recreational, such evidence may suggest that the taxpayer entered into the activity for reasons other than profit. *See* Treas. Reg. § 1.183-2(b)(9). However, this factor is not necessarily dispositive, as "suffering has never been made a prerequisite to deductibility." *Jackson v. Commissioner*, 59 T.C. 312, 317 (1972).

That said, "where the possibility for profit is small . . . and the possibility for gratification is substantial, it is [often] clear that the latter possibility constitutes the primary motivation for the activity." *Dodge v. Commissioner*, T.C. Memo. 1998-89, 1998 WL 88175, at \*7 (quoting *Burger v. Commissioner*, T.C. Memo. 1985-523, *aff'd*, 809 F.2d 355 (7th Cir. 1987)), *aff'd*, 188 F.3d 507 (6th Cir. 1999) (unpublished table decision). Further, "[a]lthough musical and artistic endeavors generally have personal and recreational elements, a taxpayer's personal enjoyment in pursuing the activity is not sufficient to negate a profit motive if" the other factors listed above indicate that the taxpayer engaged in the activity with a profit motive. *Wesley v. Commissioner*, T.C. Memo. 2007-78, 2007 WL 968731, at \*3.

The personal and recreational elements inherent in Ms. Jones-Mazotti's writer-researcher activities are readily apparent. She stated

**[\*16]** that she feels that writing is what she is meant to do. Further, she stated that some of her work related to missing persons is "very much a passion." In addition, Ms. Jones-Mazotti went on extensive vacations—to Hawaii, California, and Florida, among other places—with her family for purported research trips. It is apparent that her motives and the recreational or personal elements of her writer-researcher activities outweighed the desire for profit. *See, e.g.*, *Wright v. Commissioner*, 31 T.C. 1264, 1267 (1959) (disallowing a business deduction for an around-the-world trip in which the petitioner wrote in a diary and purportedly wanted to publish a book based on the diary), *aff'd per curiam*, 274 F.2d 883 (6th Cir. 1960).

Thus, this factor also weighs heavily against the Mazottis.

### 10. *Conclusion*

In sum, on the basis of the foregoing analysis, we find that Ms. Jones-Mazotti did not engage in her writer-researcher activities with the primary motivation of earning a profit. Accordingly, we sustain the IRS's disallowance of alleged business expense deductions associated with those activities.

## IV. *Penalties*

The last issue for us to decide is whether the Mazottis are liable for accuracy-related penalties. Section 7491(c) generally provides that "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty." This burden requires the Commissioner to come forward with sufficient evidence indicating that the imposition of the penalty is appropriate.[4] *See Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). Once the Commissioner meets his burden of production, the burden of proof is on the taxpayer to "come forward with evidence sufficient to persuade a Court that the Commissioner's determination is incorrect." *Id.* at 447.

---

[4] Respondent must also demonstrate compliance with supervisory approval pursuant to section 6751(b). *See Frost v. Commissioner*, 154 T.C. 23, 34 (2020); *see also Roth v. Commissioner*, 922 F.3d 1126, 1133 (10th Cir. 2019) (examining requirements of section 6751(b)), *aff'g* T.C. Memo. 2017-248. The record reflects that respondent has met his burden under section 7491(c) to demonstrate compliance with the requirements of section 6751(b).

**[\*17]** Section 6662(a) and (b)(1) and (2) impose an accuracy-related penalty equal to 20% of the portion of an underpayment of tax required to be shown on a return that is attributable to "[n]egligence or disregard of rules or regulations" or "[a]ny substantial understatement of income tax," or both. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code. *See* § 6662(c); *Higbee*, 116 T.C. at 448; Treas. Reg. § 1.6662-3(b)(1). Treasury Regulation § 1.6662-3(b)(1)(ii) provides that negligence is strongly indicated where a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit, or exclusion on a return, "which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances." *See also Neonatology Assocs., P.A. v. Commissioner*, 299 F.3d 221, 234 (3d Cir. 2002), *aff'g* 115 T.C. 43 (2000). Disregard includes any careless, reckless, or intentional disregard of the rules and regulations. *See* § 6662(c); *Higbee*, 116 T.C. at 448.

Ms. Jones-Mazotti did not keep formal books and records related to her purported writer-researcher expenses. And she has never run a profit-and-loss statement. Moreover, the Mazottis claimed deductions for personal expenses such as family vacations, clothing, food, home improvements, and vehicle maintenance and repair costs. When pressed about the nature of the deductions, Ms. Jones-Mazotti was evasive and often unable to explain how these personal deductions related to her purported writer-researcher business activities. A reasonable and prudent person would know that personal expenses may not be deducted under the guise of business expenses.

Under the circumstances, we conclude that the Mazottis were negligent in that they failed to make reasonable attempts to comply with the tax law and to determine the correctness of deductions that should have seemed too good to be true. *See Neonatology Assocs., P.A. v. Commissioner*, 299 F.3d at 234 ("When, as here, a taxpayer is presented with what would appear to be a fabulous opportunity to avoid tax obligations, he should recognize that he proceeds at his own peril.").

Further, "[o]nly one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set forth in section 6662(b)." *Sampson v. Commissioner*, T.C. Memo. 2013-212, at \*7–8 (citing *New Phx. Sunrise Corp. & Subs. v. Commissioner*, 132 T.C. 161, 187 (2009), *aff'd*, 408 F. App'x 908 (6th Cir. 2010)). Consequently, we need not determine whether the Mazottis are liable

**[*18]** for penalties for underpayments due to substantial understatements of income tax for the 2018 and 2019 taxable years.

## V. *Conclusion*

Based on the foregoing, we sustain the Commissioner's deficiency and negligence penalty determinations, as set forth herein. In reaching our conclusions, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*